SCHILLING, Appellant, vs. MILWAUKEE BEDDING COMPANY, Respondent.

*October 12—November 7, 1928.*

For the appellant there were briefs by *Hall, Baker & Hall* of Madison, and oral argument by *Frank W. Hall*.

For the respondent there was a brief by *Bottum, Hudnall, Lecher, McNamara & Michael* of Milwaukee, and oral argument by *George B. Hudnall*.

The following opinion was filed November 7, 1928:

CROWNHART, J. The record herein discloses a period of business transactions between J. M. McCabe and H. J. McCabe, on the one side, and the plaintiff and his family, as stockholders of the defendant corporation, on the other side. At first the Schillings owned the stock of the defendant corporation. In August, 1922, J. M. McCabe became interested in a proposition to buy from the Schillings a half interest in the corporation. There were negotiations involving the assets and liabilities of the corporation, terms of sale, and future management thereof. During these negotiations the note and indorsement of the defendant thereon came up for consideration, and the testimony shows wide divergence as to what the understanding was concerning the same. Finally

J. M. McCabe and respondent entered into an agreement in writing, dated August 28, 1922, embodying the final terms of purchase by McCabe of one half of the corporate stock of the Bedding Company. Soon thereafter a dispute arose between McCabe and Schilling as to the meaning of the written agreement, and involved in such dispute was the question of liability of the respondent to the appellant on the indorsement of the note in question.

That dispute extended over a long time, and during such time attorneys were consulted on both sides, and various meetings were held, to iron out the differences existing between the parties. Finally the McCabes, owning one half of the stock, and the Schilling interests, owning the other half, entered into the written agreement of December 7, 1923. This agreement clearly was intended to cover all the differences between the parties at the time of its execution. Upon its proper interpretation the rights of the parties to this action depend.

The respondent Bedding Company, on the trial, resorted to all the preceding negotiations as having a bearing on the interpretation of the contract of December 7th. Of course that was not permissible unless the contract was so ambiguous that its meaning could not be ascertained from the writing itself. The contract was entered into by all the officers and stockholders of the Bedding Company, it was made in part for the benefit of the Bedding Company, and later accepted by the company. The company is bound thereby the same as though signed by it.

It is unnecessary to set forth the whole contract, as the questions here in dispute are covered by the following paragraph:

"Said parties of the second part agree that upon the execution of this contract the promissory note for approximately $4,100 made by said Henry J. McCabe to Theodore D. Schilling, which is now overdue, shall be fully paid with interest; and that on December 15, 1923, said Milwaukee Bed-

ding Company shall pay to Theodore Schilling one half of the amount due upon the Sheridan-Wilson Hotel Corporation note for $5,500, which was indorsed by the Milwaukee Bedding Company to Theodore Schilling and paid for by him. Upon such payment said Bedding Company shall become the owner of an .undivided one half of said hotel company note, and upon payment to said Schilling of the balance due thereon, viz. $2,750 and interest and costs of collection by August 15, 1924, he will deliver the same to the said Bedding Company."

What is the ambiguity in this paragraph? The respondent Bedding Company is to pay the appellant $2,750 on December 23, 1923, upon a note indorsed by it and paid by Schilling. It is plainly recognized that Schilling was then the owner of the note and that the Bedding Company was liable thereon as indorser. Then the legal effect of such payment is recited, *i. e.* that the Bedding Company should become the owner of a half interest in the note upon such payment. Then follows this: "Upon payment to said Schilling of the balance due thereon, viz. $2,750 and interest and costs of collection by August 15, 1924, he will deliver the same to the said Bedding Company." What does this mean? It seems simple enough. The Bedding Company was liable to plaintiff, as indorser on a note which was past due. The plaintiff, in compromise, accepted the promise of the company to pay one half of the same due December 15, 1923, and the balance August 15, 1924. The appellant simply postponed his right of action on the indorsement until a later date, eight days on the first payment and eight months on the balance. It seems too plain for misunderstanding that the respondent was considered presently liable on its indorsement and that it sought delay in payment. Why should respondent wish to buy a defaulted note for face value? What could be its purpose in securing an option to buy a note of doubtful value eight months hence? The answer is obvious. But if there were any doubt about it, the Bedding Company, by its presi-

dent, J. M. McCabe, made the matter certain when, two days after the first payment on the indorsement as per agreement of October 7th, he wrote the following in a letter to Mr. Wurster, an attorney who held the note for collection: "The Milwaukee Bedding Company, as indorser of these notes, is desirous of having this money collected," and then urging speedy collection of the same from the maker of the note. This letter concerned the note in question. Here is a distinct recognition of the Bedding Company's liability as indorser of the note written ten days after the contract of December 7, 1923. The letter was written by J. M. McCabe as president of the Bedding Company, and it shows the respondent's understanding was then the same as claimed by appellant.

It is a well settled principle in the law that compromises of disputes are favored. When such a compromise is put into writing as a final settlement of a dispute, it will be upheld by the courts as written if the intent of the parties is clearly disclosed in such agreement. Here we find the intent disclosed from the written agreement without any outside aid. Hence no such aid is permissible. But if aid might be resorted to, the letter of the respondent shortly after the making of the contract is the best evidence of its interpretation of the agreement. All disputes prior to the written agreement are presumed to have been merged into the written agreement.

The contract is based on ample consideration, and it is not contended that it is invalid for any reason.

The complaint alleges a cause of action against defendant as indorser on a note held and owned by the plaintiff. At the trial the testimony taken covered a wide range, including evidence of all the transactions and negotiations between the Schillings and the McCabes personally and as representing the defendant Bedding Company. The contract of December 7, 1923, was admitted without objection. The complaint

should be considered amended to include all the issues necessary to a final determination.

The trial court found that there was no evidence that the note in question had ever been presented to the maker for payment when due at the place of payment, and that there was no evidence that notice of nonpayment had been given to the Bedding Company. If the contract of December 7, 1923, is a valid contract, no such evidence was required. The contract expressly recognizes the indorsement of the Bedding Company as valid. Proof of the contract was all that was required. It is unnecessary, therefore, to consider the questions of presentation, demand, and protest of the note.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment for the plaintiff.

ROSENBERRY, J., dissents.

A motion for a rehearing was denied, with $25 costs, on January 23, 1929.